

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00367-CV

IN THE MATTER OF M.J.-M.

----------

### FROM THE COUNTY COURT AT LAW OF COOKE COUNTY
### TRIAL COURT NO. JV612-12

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, appellant M.J.-M. appeals the trial court's order transferring

him from the Texas Juvenile Justice Department (TJJD) to the Texas Department

of Criminal Justice (TDCJ) to complete his determinate ten-year sentence for

---

[1]*See* Tex. R. App. P. 47.4.

aggravated assault on a public servant while in TJJD's custody.[2]  *See* Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011) (aggravated assault on a public servant is a first-degree felony); Tex. Fam. Code Ann. § 53.045(a)(6) (West 2014) (aggravated assault offense is eligible for determinate sentence).  We affirm.

## II.  Factual and Procedural Background

In 2014, after M.J.-M. turned eighteen years old, the State moved to transfer M.J.-M.'s determinate sentence to TDCJ.  At the November 7, 2014 hearing, the State's sole witness was Leonard Cucolo, TJJD's court liaison.  The trial court took judicial notice of the court's file and the TJJD records and Cucolo's report without objection.  It also admitted without objection Petitioner's Exhibit 1, a November 3, 2014 incident report from TJJD that documented an incident that had occurred four days prior to the transfer hearing wherein M.J.-M. exposed his penis to female staff members and masturbated in front of them. M.J.-M. raised no objections during Cucolo's testimony.

---

[2]M.J.-M. was fourteen years old when he was committed to TJJD in April 2011 after his community supervision was revoked.  He pleaded "true" to committing an aggravated assault on a public servant in 2012 while in TJJD's custody (after the State gave notice that it sought a determinate sentence for the offense).  *See* Tex. Fam. Code Ann. § 54.04(d)(3)(A)(ii) (West 2014) (providing for possible transfer from TJJD to TDCJ for a term of not more than forty years for a first-degree felony).  M.J.-M.'s stipulation to the evidence reflected that he struck a TJJD officer in the face while she was supervising the juvenile inmates in TJJD custody and fractured her cheek bone and the bone around her left eye (left orbital).  Her injuries necessitated medical treatment from an eye specialist and caused her to miss more than a month of work.

Cucolo testified that M.J.-M. met all of the criteria for transfer to TDCJ to complete his sentence by: committing new felony offenses and Class A misdemeanors, engaging in chronic disruption, violating twenty-six major rules, resulting in sixteen Level II hearings, and failing to progress in treatment despite having been provided with services to help remediate his behavior, including individual counseling, group counseling, and specialized treatment programs. In total, the evidence of M.J.-M.'s behavioral history reflected more than 200 documented incidents of misconduct, 131 referrals to the security unit, and 86 security placements.[3]

Cucolo stated that M.J.-M. was chronically disruptive and engaged in violent, aggressive behavior with staff and youth, "making it very difficult—an unsafe environment for the staff, unsafe environment for the kids, and it's making it difficult for the other youth that are there for similar offenses, determinate sentences as well, to engage in the program." According to Cucolo, M.J.-M. had continued to engage in serious misconduct, assaults, "major disruption[s] of facility," fleeing from apprehension, and exposure, even after he was warned in February 2014 that his psychological evaluation would be shared with the special services committee to make a decision about a return to court. Cucolo described M.J.-M. as a danger to any community to which he might be released.

---

[3]These numbers include misconduct occurring prior to M.J.-M.'s receiving his determinate sentence.

M.J.-M. and his paternal aunt S.M. both testified, seeking leniency, and the trial court permitted S.M. to testify about hearsay statements over the State's objection. During M.J.-M.'s testimony, he admitted that while incarcerated he had committed unprovoked assaults on other youths on numerous occasions and agreed that many of his fights and major rule violations were a direct result of gang violence, either his own fighting for other gang members or his "being run up on by other members."[4] M.J.-M. said that he was 5'4" tall and that all of his fights had been with people bigger than him. He stated that if he refused to beat people up as directed by his gang, there would be consequences, such as being assaulted himself. After hearing testimony from the State's sole witness and M.J.-M. and his aunt, the trial court granted the motion.

## III. Discussion

In his two points, M.J.-M. challenges the sufficiency of the evidence to support the trial court's finding that he was a threat or danger to himself or others and complains that the only evidence presented by the State was "unreliable and non-credible hearsay testimony" in violation of his right to confrontation under the Sixth Amendment.

In his second point, M.J.-M. asks us to adopt the dissenting opinion in *In re M.P.,* 220 S.W.3d 99, 115 (Tex. App.—Waco 2007, pet. denied) (Vance, J., dissenting) (concluding that a juvenile should be afforded the Sixth Amendment

---

[4]The offense for which M.J.-M. had received the determinate sentence involved his attempt to get into a gang.

confrontation right in the disposition phase of a juvenile proceeding). Doing so would require a departure from our conclusion in *In re S.M.*, 207 S.W.3d 421, 425 (Tex. App.—Fort Worth 2006, pet. denied), that *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), does not apply in juvenile transfer hearings.[5] We decline this invitation.

We review a trial court's decision to transfer a juvenile under family code section 54.11 for an abuse of discretion. *In re J.M.*, No. 02-05-00180-CV, 2005 WL 3081648, at *3 (Tex. App.—Fort Worth Nov. 17, 2005, no pet.) (mem. op.). If some evidence exists to support the trial court's decision, there is no abuse of discretion. *Id.* As set out above, some evidence supports the trial court's decision; therefore, we overrule this portion of M.J.-M.'s two points.

---

[5]*See S.M.*, 207 S.W.3d at 425 (concluding that *Russeau v. State*, 171 S.W.3d 871, 880–81 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006)—which held that the introduction of prison incident and disciplinary reports violated the Sixth Amendment's Confrontation Clause—did not apply to juvenile proceedings because the Confrontation Clause explicitly applies to "criminal prosecutions," the reports in *Russeau* were admitted at the punishment stage of the defendant's *criminal* trial, and a transfer hearing under family code section 54.11 is not a trial because the juvenile is neither being adjudicated nor sentenced; instead, the transfer hearing is a "second chance hearing" after the juvenile has already been sentenced to a determinate number of years); *see also In re C.E.C.*, No. 02-06-00065-CV, 2006 WL 3627134, at *2 (Tex. App.—Fort Worth Dec. 14, 2006, no pet.) (mem. op.) ("A juvenile . . . has no right of confrontation at a discretionary transfer hearing. Therefore, the trial court did not abuse its discretion by overruling appellant's objection based on the Confrontation Clause."); *In re D.J.*, 909 S.W.2d 621, 623 (Tex. App.—Fort Worth 1995, writ dism'd w.o.j.) ("A seeming violation of a juvenile's Sixth Amendment right to confrontation is not error at a transfer hearing.").

Because he did not lodge any objections to any of the evidence admitted in the transfer hearing, M.J.-M. failed to preserve the remainder of his points for our review.  *See* Tex. R. App. P. 33.1.  Therefore, we overrule the remainder of his two points as unpreserved.

## IV. Conclusion

Having overruled both of M.J.-M.'s points, we affirm the trial court's order of transfer.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  GARDNER, WALKER, and SUDDERTH, JJ.

DELIVERED:  August  6, 2015